UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL VALERIANO MEJIA FUGON, | No. 1:26-cv-01841-DC-AC (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | (Doc. No. 2) |

This matter is before the court on Petitioner Angel Valeriano Mejia Fugon's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with his petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.      Factual Background**

Petitioner Angel Valeriano Mejia Fugon is a native and citizen of Peru. (Doc. No. 1 at ¶ 14.) When Petitioner entered the United States, he was processed for expedited removal but released pending a credible fear interview. (*Id.*) Petitioner applied for the U-Visa program. (*Id.* at ¶ 15.) On November 4, 2025, U.S. Citizenship and Immigration Services ("USCIS") determined that Petitioner was a bona fide U-Visa applicant (the "Bona Fide Determination"), thereby

1

entitling Petitioner to employment authorization and deferred action. (*Id.*; Doc. No. 2-3 at 4.) Petitioner's Bona Fide Determination expires on November 4, 2029, four years from the issuance of the notice granting Petitioner's Bona Fide determination. (Doc. No. 2-3 at 4.)

On November 19, 2025, Petitioner attended a scheduled check in appointment with U.S. Immigration and Customs Enforcement ("ICE"). (Doc. No. 1 at ¶ 17.) ICE detained Petitioner at that hearing. (*Id.*) ICE informed Petitioner that he was subject to a deportation order but did not show him that document or read him his rights. (*Id.*) Petitioner alleges that he complied with all terms of his Inmate Supervision and Assistance Program before his arrest. (*Id.* at ¶ 16.) Since his arrest, Petitioner has been detained at the California City Detention Facility in California City, California. (*Id.*)

Respondents contend that Petitioner misstates his immigration record and allege as follows. Petitioner first unlawfully entered the United States in 2014. (Doc. Nos. 6 at 2; 6-1 at 2.) Later that year, Petitioner was removed from the United States. (*Id.*) Petitioner unlawfully reentered the United States in January 2019. (*Id.*; Doc. No. 6-4 at 13.) The U.S. Department of Homeland Security ("DHS") reinstated his 2014 final order of removal at that time. (*Id.*) However, because Petitioner was traveling with a child, he was released from detention on an order of supervision and placed in an alternatives to detention program. (*Id.*) Respondents allege that Petitioner violated the terms of his alternatives to detention program by missing a verification phone call on October 7, 2020, and by missing a home visit and two biometric check-ins between 2022 and 2024. (*Id.*; Doc. No. 6-2 at 1.) Petitioner was re-detained on November 19, 2025, due to these violations of his order of supervision. (*Id.*) Respondents contend that Petitioner is subject to a final removal order pursuant to his reinstated order of removal, and that both a USCIS officer and an immigration judge have determined that Petitioner does not have a credible fear of removal to his home country.[1]

/////

---

[1] Respondents additionally allege that, contrary to Petitioner's representations in his habeas petition and pending motion, he is a native and citizen of Honduras, not Peru. (Doc. No. 6 at 1.) Petitioner does not address this discrepancy in his reply. Petitioner's native country does not affect the court's analysis.

2

**B.     Procedural Background**

On March 6, 2026, Petitioner filed his habeas petition asserting the following claims against Respondents Christopher Chestnut, Moises Becerra, Kristi Noem, and Pamela Bondi: (1) violation of his Fifth Amendment right to Due Process relating to his continued detention without an individualized bond hearing; (2) violation of 8 U.S.C. § 1226(a) relating to Petitioner's detention under that statute without an individualized bond hearing; and (3) violation of 8 C.F.R. §§ 245.24(a)(3) and 214.14(d)(2) relating to the revocation of Petitioner's deferred action without cause. (Doc. No. 1 at 27–28.) By his petition, Petitioner seeks an order requiring Petitioner's immediate release, or in the alternative, requiring Respondents to provide Petitioner with a bond hearing at which his eligibility for release must be considered, and awarding Petitioner attorney's fees and costs pursuant to the Equal Access to Justice Act. (*Id.* at 28–29.) On that same day, Petitioner filed the pending motion, arguing that he was unlawfully detained without a pre-deprivation bond hearing in violation of the rights conferred to him by his Bona Fide Determination. (Doc. No. 2-1 at 7–10.) Petitioner seeks his "release based on violations of his liberty interest that accrued after his release from detention that occurred without a pre-deprivation hearing." (*Id.* at 3.)

On March 11, 2026, Respondents filed their opposition arguing that this court does not have jurisdiction to consider Petitioner's claim, that Petitioner is subject to a final removal order and is therefore detained under 8 U.S.C. § 1231, pursuant to which he is not entitled to a pre-deprivation bond hearing, and that Petitioner does not maintain a protected interest in his Bona Fide Determination. (Doc. No. 6 at 4–8.)

On March 12, 2026, Petitioner filed his reply thereto, arguing that even if Petitioner is detained under § 1231, his Bona Fide Determination makes his removal in the foreseeable future unlikely, rendering his continued detention unconstitutional. (Doc. No. 7 at 2–5.) Alternatively, Petitioner requests leave to amend his petition to add a count related to the alleged violation of his post-removal order proceedings. (*Id.* at 5–6.)

/////

/////

3

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

**A.      Likelihood of Success on the Merits**

      1.      <u>Jurisdiction</u>

Respondents contend that 8 U.S.C. § 1252(g) deprives the court of jurisdiction to consider Petitioner's habeas petition. (Doc. No. 6 at 8–9.) Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[2] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Respondents argue that "[b]y asking this Court to prohibit ICE from continuing to detain him, Petitioner necessarily challenges the execution of his removal order," and that "[e]xecution of removal orders falls squarely within the Attorney General's discretion to "'execute removal orders.'" (Doc. No. 6 at 9.)

The Ninth Circuit, however, has instructed that § 1252(g) must be read "narrowly" and has interpreted that section as applying only to "actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders." *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018). Thus, where DHS "totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated." *Arce*, 899 F.3d 796 at 801; *see also Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) ("We have jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority.'") (quoting *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004)). As Respondents concede, courts within the Ninth Circuit have found that where a petitioner has been granted deferred action pursuant to a Bona Fide Determination, the court maintains jurisdiction to consider the petitioner's challenge to his removal because the petitioner challenges DHS's lawful authority to execute the removal order rather than its discretionary decision to do so. *See Gama v. Bondi*, No. 2:25-cv-01925-TL, 2025 WL 3559942, at *3 (W.D. Wash. Dec. 12, 2025) ("But for the grant of deferred action, Petitioner would have no basis to challenge his detention. It is thus clear that Petitioner's claims arise from USCIS's grant of deferred action, combined with ICE's refusal to

---

[2] In 2002, Congress transferred the Attorney General's immigration enforcement responsibilities to the Secretary of DHS. *Arce v. United States*, 899 F.3d 796, 799 n.4 (9th Cir. 2018).

5

honor that grant, rather than the execution of a removal order. Accordingly, Section 1252(g) does not strip the Court of jurisdiction.").

While Respondents do cite to several out-of-circuit orders in which courts determined that § 1252(g) stripped it of jurisdiction to consider a petitioner's challenge to his detention or removal in relation to a U Visa application, those cases are inapposite as the petitioners had not received a Bona Fide Determination, and therefore had not been granted deferred action precluding lawful execution of their removal order. *See Alegria-Zamora v. U.S. Dep't of Homeland Sec.*, No. 18-2102-DDC-GLR, 2018 WL 1138280, at *1 (D. Kan. Mar. 2, 2018) ("Plaintiff requested that [ICE] stay his deportation pending adjudication of his U visa application. ICE denied that request."); *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("E.F.L. challenges DHS's decision to execute her removal order while she seeks administrative relief," but "she does not challenge the legality of her removal order."); *Mingrone v. Adducci*, No. 2:17-cv-11685, 2017 WL 4909591, at *1 (E.D. Mich. July 5, 2017) ("Mingrone's primary claim is that it is unlawful for ICE to remove him before USCIS makes a *prima facie* determination on his pending application for a U-Visa. As explained below, this Court lacks jurisdiction over that claim."). Here, on the other hand, Petitioner challenges Respondents' lawful authority to execute his order of removal given USCIS's previous grant of deferred action. Accordingly, the court finds that Petitioner is likely to succeed in showing that the court has jurisdiction to consider his habeas petition.

2.    Bona Fide Determination

Petitioner contends that the government detained Petitioner without process despite his U-Visa Bona Fide Determination, thus his "liberty interest created by [the] deferred action was revoked without cause violating his procedural right to due process." (Doc. No. 1 at ¶ 73.) Respondents argue that "Petitioner's re-detention was lawful because Petitioner did not gain a protected interest when USCIS decided to delay his removal," as the Bona Fide Determination is entirely discretionary and may be revoked at any time. (Doc. No. 6 at 6–7.)

A U-Visa is a nonimmigrant visa that allows noncitizens who have been victims of certain enumerated crimes to obtain lawful status if they are likely to be helpful in the investigation or

6

prosecution of that crime. 8 U.S.C. § 1101(a). U-Visas are statutorily capped at 10,000 per year. 8 U.S.C. § 1184(p)(2). That statutory cap has been reached every year since 2009. *De Sousa v. Dir. of U.S. Citizenship and Immigr. Servs.*, 755 F. Supp. 3d 1266, 1269 (N.D. Cal. 2024). Thus, USCIS established a U-Visa regulatory waiting list process. 8 C.F.R. § 214.14(d)(2). Under the waiting list regulations, if USCIS determines that a U-Visa application is approvable but cannot be issued "due solely" to the 10,000-applicant cap, the petitioner "must be placed on [the] waiting list." *Id.* However, this waiting list has its own backlog; in 2020, the median processing time between USCIS's receipt of the U-Visa petition until placement on the waiting list was over four years. *De Sousa*, 755 F. Supp. 3d at 1269. Due to this growing backlog, USCIS issued the Bona Fide Determination policy. *Id.* Applicants who receive a Bona Fide Determination are granted deferred action and work authorization for a period of four years. *Id.* Indeed, in Petitioner's Bona Fide Determination Notice, a copy of which Petitioner concurrently filed with his pending motion, USCIS informs Petitioner that his U-Visa application is "bona fide, and that [it] warrant[s] a favorable exercise of discretion to receive employment authorization and deferred action." (Doc. No. 2-3 at 4.) The "employment authorization document and grant of deferred action are valid for a period of four years." (*Id.*) Petitioner's Bona Fide Notice date was November 4, 2025. *Id.*

The controlling question here is whether Petitioner maintained a property interest in the benefits conferred to him by the Bona Fide Determination such that Respondents could not deprive him of those benefits without due process.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

To maintain a property interest in a government benefit, such as deferred action and

7

employment authorization, "a person clearly must have more than an abstract need or desire for [the benefit]." *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). The person "must have more than a unilateral expectation of it," and must "instead have a legitimate claim of *entitlement* to it." *Id.* This property interest must "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Numerous courts within the Ninth Circuit have found that noncitizens who have been granted deferred action pursuant to a Bona Fide Determination are entitled to protection from removal, and that they maintain a due process property interest in that protection. For instance, in *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 905 (W.D. Wash. July 24, 2025), a petitioner was detained by ICE pursuant to a reinstated final order of removal, and shortly after his detention, USCIS issued the petitioner a Bona Fide Determination in relation to the petitioner's previous U-Visa application. *Id.* The petitioner filed a habeas petition challenging his detention, and ICE opposed, arguing that the petitioner was subject to mandatory detention under § 1231(a). *Id.* The court disagreed, finding that the petitioner's "interpretation of deferred action—that the Government will refrain from executing his removal—finds strong support in Supreme Court precedent, circuit authority, and USCIS policy." *Id.* at 914. Specifically, the court in *Sepulveda Ayala* noted that the Supreme Court has described deferred action as "meaning 'no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.'" *Id.* at 912 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). The court further noted that "[n]umerous Ninth Circuit opinions confirm that deferred action prevents recipients' removal from the United States." *Id.* (collecting cases). Accordingly, the court in *Sepulveda Ayala* found that the petitioner maintained a property interest

/////

/////

/////

/////

8

in his deferred action that could not be revoked without due process.[3] *Id.* at 914; *see also B.D.A.A. v. Bostock*, No. 6:25-cv-02062-AA, 2025 WL 3484912, at *7 (D. Ore. Dec. 4, 2025) ("Respondents deprived Petitioner of her Fifth Amendment due process rights by detaining her without notice and hearing. Respondents thus nullified Petitioner's bona fide U visa determination and its attendant benefits, including Petitioner's work authorization and deferred action status without due process."); *Nevarez Jurado v. Freden*, No. 25-cv-0094-LJV, 2025 WL 3687264, at *11 (W.D.N.Y. Dec. 19, 2025) ("[I]n addition to establishing that his unrevoked deferred action status prevents his removal from the United States, [the petitioner] also has established that his ongoing detention has violated his rights under the Fifth Amendment's Due Process Clause.").

In their opposition, Respondents contend that Petitioner does not have a due process interest in his deferred action status because the USCIS Policy Manual states that "USCIS reserves the right to revoke the [Bona Fide Determination employment authorization] and terminate the grant of deferred action at any time if it determines the [Bona Fide Determination employment authorization] or favorable exercise of discretion are no longer warranted, or the prior [Bona Fide Determination employment authorization] and deferred action were granted in error." (Doc. No. 6 at 7) (quoting USCIS, Policy Manual, Vol. 3, Part C. Ch. 5, https://www.uscis.gov/policymanual/volume-3-part-c-chapter-5 (last visited March 28, 2026)). However, Respondents ignore the succeeding paragraph, which states that upon determination that a Bona Fide Determination should be revoked, "USCIS initiates a waiting list adjudication to gather additional information and evidence to determine if the petitioner is eligible for a waiver of

---

[3] The court in *Sepulveda Ayala* primarily analyzed the petitioner's claim through the effect the petitioner's deferred status had on ICE's authority to detain him under § 1231. Here, because Petitioner alleges in his petition that he is detained under 8 U.S.C. § 1226(a), he does not assert a claim relating to Respondents' authority to detain him under § 1231(a). (Doc. No. 1 at 27–28.) In his reply, Petitioner requests that if the court denies his pending motion, the court grant him leave to amend his petition to assert claims under the proper detention authority. (Doc. No. 7 at 5–6.) Because the court will grant Petitioner his requested relief on due process grounds, it will not address his statutory argument. If Petitioner would like to amend his petition to assert claims under § 1231(a) following issuance of this order, he may request leave from the assigned magistrate judge to do so.

inadmissibility for any relevant inadmissibility grounds and placement on the waiting list." *Id.* Here, after his detention, Petitioner was issued a notice of intent to deny his U-Visa, which states that Petitioner is not eligible for the U-Visa unless "[he] establish[es] that [his] family member is not inadmissible or USCIS waives this ground of inadmissibility." (Doc. No. 6-3 at 2.) Petitioner was given until April 14, 2026, to respond to that notice of intent to deny, and the notice explicitly states that a decision will not be made as to the inadmissibility waiver until Petitioner has had the opportunity to respond. (*Id.* at 3) ("A final decision will not be made for thirty-three days. During that time you may submit evidence to overcome the noted reasons for denial."). Thus, assuming arguendo that the process provided in the USCIS manual is sufficient to protect Petitioner's property interest in his Bona Fide Determination, Respondents did not follow the very policy they now argue allows for Petitioner's detention.

Respondents additionally cite several cases which they argue demonstrate that a noncitizen does not have a property interest in their pending U-Visa application. (Doc. No. 6 at 7–8.) However, as Respondents acknowledge, in those cases the petitioners had *pending* U-Visa applications, not Bona Fide Determinations. Thus, the government had not affirmatively granted the petitioners deferred action, as here, and those cases are therefore inapposite. *See Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 888 (N.D. Cal. 2008); *Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 95 (D.S.C. 2020); *Velarde-Flores v. Whitaker*, 750 F. App'x 606, 607 (9th Cir. 2019); *Palacios-Bernal v. Barr*, No. 5:19-cv-1963, 2019 WL 5394019, at *4 (C.D. Cal. Oct. 22, 2019).

Accordingly, the court finds that Petitioner has demonstrated a likelihood of success on the merits of his claim that his detention without process violated his property interest in the deferred action he is entitled to by his Bona Fide Determination, and therefore his continued detention violates his Fifth Amendment right to due process.

**B.    Irreparable Harm**

It is well established that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a

constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.").

Because the court finds that Respondents violated Petitioner's constitutional right to due process by detaining him despite his deferred action status without process, the second *Winter* factor weighs in favor of granting Petitioner injunctive relief.

**C.      Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted). Though Respondents have an interest in enforcing immigration laws, Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from detaining Petitioner in violation of his constitutional rights, which is the case here. This relief also benefits the public because "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.      Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive

11

relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

**E.    Remedy**

Respondents argue that, should the court find that Petitioner is entitled to injunctive relief, the relief should be limited to a bond hearing in front of an immigration judge rather than Petitioner's release. (Doc. No 6 at 10.) Respondents contend that a bond hearing is appropriate here because Respondents "have a strong interest in detaining this Petitioner who unlawfully reentered the United States after a prior removal order, violated the terms of his release, and now is subject to removal." (*Id.*)

This court has previously found that where a noncitizen's right to due process is violated by their re-detention, the proper injunctive relief places the parties at the last uncontested status preceding the controversy. *See Barajas Ortiz v. Chestnut*, No. 1:26-cv-01167-DC-SCR, 2026 WL 508419, at *5 (E.D. Cal. Feb. 24, 2026) (citing *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. Sep. 23, 2025). In this case, injunctive relief placing Petitioner in his last uncontested status requires his release on the same terms of supervision that he was subject to prior to his re-detention. This relief is consistent with that provided by other courts within the Ninth Circuit who have found that deferred action recipients detained without process are entitled to injunctive relief. *Gama*, 2025 WL 3559942, at *4; *B.D.A.A.*, 2025 WL 3484912 at *8. Accordingly, the

court will order Petitioner's immediate release.

## CONCLUSION

For the reasons explained above,

1.    Petitioner Angel Valeriano Mejia Fugon's motion for a temporary restraining order (Doc. No. 2) is GRANTED;

2.    Petitioner Angel Valeriano Mejia Fugon shall be released immediately from the Respondents' custody. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3.    If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter at which the government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's detention is warranted; and

4.    This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:    **March 30, 2026**

_____
Dena Coggins
United States District Judge

13